# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TIMMY HOWARD DICKEY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. CIV-15-685-M |
| | ) |
| ROBERT PATTON, Director, | ) |
| Oklahoma Department of | ) |
| Corrections; and the | ) |
| STATE OF OKLAHOMA, | ) |
| | ) |
| Respondents, | ) |

## REPORT AND RECOMMENDATION

Petitioner, through counsel, filed a petition seeking, alternatively, a writ of habeas corpus under 28 U.S.C. § 2254, a writ of habeas corpus under 28 U.S.C. § 2241, a writ of audita querela, or a writ of coram nobis. Doc. 1. Chief United States District Court Judge Vicki Miles-LaGrange referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Respondents filed a motion to dismiss challenging the Court's jurisdiction under §§ 2241(c)(3) and 2254(a), Doc. 8, and Petitioner responded. Doc. 9. The undersigned has examined the petition and the parties' briefs, and recommends that the Court grant Respondents' motion to dismiss. The Court should then deny Petitioner's alternate requests for relief.

I. **Background.**

In Caddo County District Court, Case No. CF-2010-279, a jury found Petitioner guilty of child sexual abuse and the trial court sentenced him to five years' incarceration. Doc. 1, at 6.[1] In April 2013, on direct appeal, the Oklahoma Court of Criminal Appeals (OCCA) modified Petitioner's conviction to the lesser included crime of incest after finding that the evidence did not sufficiently prove that Petitioner was responsible for the victim's welfare – an element of child sexual abuse – but that it did support the crime of incest. *Id.* Ex. 2, at 2-5; Ex. 3, at 2. Then, in August 2014, the OCCA affirmed the state court's denial of post-conviction relief. *Id.* Ex. 3.

Petitioner discharged his sentence in November 2013, *id.* Ex. 3, at 1; Doc. 8, Ex. 2, and filed the instant action on June 23, 2015. Doc. 1, at 1.

II. **Petitioner's request for relief under §§ 2241 or 2254.**

A. **The "in custody" requirement.**

"Section[s] [2241(c)(3) and] 2254(a) require[] a petitioner to be in custody . . . in violation of the Constitution or laws or treaties of the United States. The custody requirement is jurisdictional." *Calhoun v. Att'y Gen. of Colo.*, 745 F.3d 1070, 1073 (10th Cir. 2014) (internal quotation marks omitted) (discussing § 2254(a)); *see also* 28 U.S.C. § 2241(c)(3). And, "[a] petitioner must satisfy the custody requirement at the time the habeas

---

[1] All page citations refer to the court's CM/ECF pagination.

2

petition is filed." *Calhoun*, 745 F.3d at 1073 (citing *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)). However, a petitioner "need not . . . show actual physical custody to obtain relief." *Id.* (citing *Maleng v. Cook*, 490 U.S. 488, 491 (1989) (per curiam)). "The writ is available in situations where a state-court criminal conviction has subjected the petitioner to 'severe restraints on [his or her] individual liberty.'" *Id.* (quoting *Hensley v. Mun. Ct.*, 411 U.S. 345, 351 (1973)); *see Mays v. Dinwiddie*, 580 F.3d 1136, 1139 (10th Cir. 2009) ("[The custody requirement] encompasses not only individuals subject to immediate physical imprisonment, but also those subject to restraints not shared by the public generally that significantly confine and restrain freedom."). "'[But], the collateral consequences of a conviction, those consequences with negligible effects on a petitioner's physical liberty of movement, are insufficient to satisfy the custody requirement.'" *Calhoun*, 745 F.3d at 1073 (quoting *Virsnieks v. Smith*, 521 F.3d 707, 708 (7th Cir. 2008)).

B. **Petitioner's custody status.**

Petitioner discharged his prison sentence in November 2013, approximately nineteen months before he filed the instant petition. Doc. 1, at 1 ("Petitioner . . . has discharged his prison sentence of five years, . . . ."). Regardless, Petitioner claims he is still "in custody" because he "is obligated to register as a sex offender pursuant to his conviction for incest,"

*id.*, which in Oklahoma "infringes *significantly* upon his freedom." Doc. 9, at 3. The undersigned disagrees with Petitioner's argument.

### 1. The *Calhoun* precedent.

As here, the petitioner in *Calhoun* filed a writ of habeas corpus challenging his state court conviction *after* he finished serving his sentence. *See Calhoun*, 745 F.3d at 1072-73. The petitioner argued that he was nevertheless "in custody" because he was "required to register pursuant to Colorado's sex-offender statutes." *Id.* at 1072. As a matter of first impression, the Tenth Circuit disagreed, holding that the petitioner was not "in custody" because his obligation to register as a sex offender in Colorado was a "collateral consequence[] of [his] conviction that do[es] not impose a severe restriction on [the petitioner's] freedom." *Id.* at 1074. In so ruling, the Tenth Circuit announced:

> [W]e join the circuits uniformly holding that the requirement to register under state sex-offender registration statutes does not satisfy § 2254's condition that the petitioner be "in custody" at the time he files a habeas petition. *See Wilson v. Flaherty*, 689 F.3d 332, 335, 338-39 (4th Cir. 2012) (considering Virginia and Texas sex-offender-registration statutes; petitioner moved from Virginia to Texas) . . .; *Virsnieks*, 521 F.3d at 720 (Wisconsin statute); *Leslie v. Randle*, 296 F.3d 518, 522-23 (6th Cir. 2002), (Ohio statute); *McNab v. Kok*, 170 F.3d 1246, 1247 (9th Cir. 1999) (per curiam) (Oregon statute); *Henry v. Lungren*, 164 F.3d 1240, 1241-42 (9th Cir. 1999) (California statute); *Williamson* [*v. Gregorie*], 151 F.3d [1180], 1184 [(9th Cir. 1998)] (Washington statute).

*Id.*

4

Petitioner does not ignore *Calhoun*, but argues that the case is distinguishable because the ruling is based on Colorado's Sex Offender Registration Act (SORA), which does not include Oklahoma's work and residency restrictions. Doc. 9, at 4. According to Petitioner, these restrictions significantly affect his physical liberty or movement. *Id*. Further, Petitioner argues that the Tenth Circuit relied on the fact that Colorado's SORA is remedial, while Oklahoma's SORA is punitive. *Id*. at 4-6. In sum, Petitioner alleges that Oklahoma's SORA more substantially restricts his physical liberties than does Colorado's SORA, so *Calhoun* is not binding. Petitioner correctly restates the Oklahoma Supreme Court's conclusion that SORA imposes "a severe restraint on liberty." Doc. 9, at 6 (citing *Starkey v. Okla. Dept. of Corr*., 305 P.3d 1004, 1030 (Okla. 2013)). Nevertheless, the undersigned disagrees that such restraint alone satisfies §§ 2241(c)(3) or 2254(a)'s "in custody" requirement.

### a. Plaintiff's physical liberty.

Petitioner correctly states that Oklahoma's SORA includes several more stringent restrictions than does Colorado's SORA. For example, in Oklahoma:

> An offender may not reside, either temporarily or permanently, within a two-thousand-foot radius of any public or private school, educational institution, property or campsite whose primary purpose is working with children, a playground or park operated or supported in whole or part by public funds, or a

5

> licensed child care center. This restriction is made regardless of whether the original victim was a child or an adult. It is also unlawful for an offender to reside with minor children if their original victim was a minor child. Further, with few exceptions, a registered sex offender shall not reside with other registered sex offenders.

*Starkey*, 305 P.3d at 1023 (citations omitted). Further, registered sex offenders may not work with children or in law enforcement. *See* Okla. Stat. tit. 57, § 589. The statute also requires various "in person" registration requirements, including when (1) inhabiting a new residence, (2) leaving a residence, (3) changing employment, and (4) enrolling as a student. *Id.* § 583. Colorado's SORA include no such restrictions. *See* Colo. Rev. Stat. §§ 16-22-101 to 115; *see also Ryals v. City of Englewood*, 962 F. Supp. 2d 1236, 1244 (D. Colo. 2013) ("To date, Colorado's statutes and regulations on sex offender management do not contain a provision limiting sex offender residency, despite one attempt in 2006 to adopt a statewide restriction.").

Petitioner focuses on the differences between Colorado and Oklahoma's SORAs, arguing that – unlike in *Calhoun* − Oklahoma's restrictions substantially constrain his physical liberty. Doc. 9, at 7; *see also Starkey*, 305 P.3d at 1022-23 (observing that SORA's registration "significant and intrusive" requirements "are similar to the treatment received by probationers subject to continued supervision"). However, while Petitioner faces residency and in-person registration demands, he does not need the

6

government's permission to travel, or to relocate within or outside of Oklahoma. As one court has held:

> The sex offender registration requirement, . . . under . . . Oklahoma law, does not prevent [a] petitioner from traveling and does not restrain his liberty in any meaningful way. It is clearly a collateral consequence of the conviction, rather than the type of restraint on liberty that satisfies the "in custody" requirement for purposes of Section 2254.

*Davis v. Nassau Cty.*, 524 F. Supp. 2d 182, 188 (E.D.N.Y. 2007) (holding that the court lacked jurisdiction over petitioner's § 2254 petition because he was not "in custody" despite being subject to New York and Oklahoma's SORAs). So, the reduced impact on Petitioner's physical liberty of *movement* diminishes his argument that *Calhoun*'s holding does not apply here. *See Williamson*, 151 F.3d at 1184 ("[T]he constraints of this [sex offender registration] law lack the discernible impediment to movement that typically satisfies the 'in custody' requirement."); *see also, e.g., Stevens v. Fabian*, No. CIV-08-1011-ADM/AJB, 2009 WL 161216, at *11 (D. Minn. Jan. 22, 2009) (unpublished order adopting report and recommendation) (rejecting petitioner's claim that the "'banning ordinances,'" which prohibit a sex offender from living within certain areas, caused him to be "'in custody'" because petitioner had not shown that such ordinances "create such a new and materially different type of burden that they would effectively change sex offender registration laws from 'collateral consequences' into 'custody'"

7

(citations omitted)); *see also Leslie*, 296 F.3d at 522 (Petitioner's "continued freedom is not conditioned on his ability to remain employed, . . . .").

### b. Oklahoma's SORA's punitive nature.

Petitioner also accurately argues that the Oklahoma Supreme Court has held that Oklahoma's SORA is punitive. *See* Doc. 9, at 6; *Starkey*, 305 P.3d at 1030. Colorado's SORA is remedial. *See Calhoun*, 745 F.3d at 1074. However, the undersigned finds that Oklahoma's punitive SORA alone does not place Petitioner "in custody" under §§ 2241(c)(3) or 2254(a). [2]

First, *Starkey* addressed only whether retroactive application of Oklahoma's SORA violated the Oklahoma Constitution's prohibition against ex post facto laws. *See Starkey*, 305 P.3d at 1030. Unquestionably the Oklahoma Supreme Court concluded that SORA's "many obligations impose a severe restraint on liberty . . . ." *Id*. ("The retroactive extension of SORA's registration is inconsistent with the ex post facto clause in the Oklahoma Constitution."). But the Oklahoma Supreme Court's analysis merely weighed SORA's punitive purpose against its non-punitive purpose. *Id*. Because the punitive purpose outweighed its non-punitive purpose, the court concluded that "[t]he retroactive extension of SORA's registration is inconsistent with the ex post facto clause in the Oklahoma Constitution." *Id*.

---

[2]   The State opted not to file a reply brief, offering no argument regarding the Oklahoma Supreme Court's *Starkey* ruling and its potential impact upon this matter.

That inquiry fails to address the essential requirement: is Petitioner's SORA limitation a "condition of his sentence that could subject him to reincarceration or place another restraint on his liberty?" *Calhoun*, 745 F.3d at 1074.

Petitioner argues that Oklahoma's SORA is actually "***part of his punishment for his underlying crime***[.]" Doc. 9, at 6. But the trial court did not "sentence" Petitioner to SORA's requirements. Doc. 8, Ex. 1. And, Oklahoma's statute specifically states that the SORA registration date "shall begin from the date of the completion of the sentence." Okla. Stat. tit. 57, § 583(C), (D). "[T]he 'date of the completion of the sentence' means the day an offender completes all incarceration, probation and parole pertaining to the sentence." *Id.* § 583(G). By its definition, Oklahoma's SORA is not a continuation or condition of Petitioner's sentence, but begins when he *completes* his sentence.[3]

---

[3] While some circuit courts have pointed out the remedial nature of various states' SORAs for ex-post-facto purposes, the undersigned finds no case in which the statute's remedial-versus-punitive nature served as the deciding factor. Indeed, most courts discussing the remedial issue note it as simply one supporting factor. *See, e.g., Calhoun*, 745 F.3d at 1074 (observing "the Colorado sex-offender registration requirements are remedial, not punitive"); *Leslie*, 296 F.3d at 523 ("[T]he Ohio Supreme Court's conclusion that the sexual-predator statute is a form of civil regulation provides additional support for our conclusion that the classification, registration, and community notification provisions are more analogous to collateral consequences such as the loss of the right to vote than to severe restraints on freedom of movement such as parole.").

### c. *Calhoun* summary.

The undersigned finds that the differences between Oklahoma's and Colorado's SORAs do not materially distinguish Petitioner's case from *Calhoun* − the precedent that binds this Court. *See United States v. Spedalieri*, 910 F.2d 707, 709 (10th Cir. 1990) ("The district judge was bound to and did indeed follow Tenth Circuit precedent . . . ."). Indeed, this Court just recently rejected an Oklahoma petitioner's claim he was "in custody" because he had to register as a sex offender in Oklahoma, finding: "[p]ursuant to binding Tenth Circuit authority, however, 'the requirement to register under state sex-offender registration statutes does not satisfy § 2254's condition that the petitioner be 'in custody' at the time he files a habeas petition.'" *Johnson v. Pruitt*, No. CIV-14-525-C, 2015 WL 4644818, at *3 (W.D. Okla. Aug. 4, 2015) (unpublished order adopting report and recommendation) (quoting *Calhoun*, 745 F.3d at 1074).

### 2. Persuasive holdings from sister circuits.

In addition to *Calhoun's* binding precedent, the undersigned finds further guidance for her conclusion in two sister circuits' opinions.

### a. The Fourth Circuit's *Wilson v. Flaherty*.

In *Wilson v. Flaherty*, 689 F.3d at 336-37, the Fourth Circuit discussed the absurd results that would arise if a petitioner is found "in custody" under a SORA. The court reasoned,

> In this case, it is undisputed that Wilson fully served his sentence and was *unconditionally* released from custody in 2005. Thus, there was no term or condition of his sentence that could subject him to reincarceration or impose any other restraint on his liberty. Instead, all of the registration requirements on which Wilson relies to argue that his liberty is being substantially restrained arise from the collateral, independent requirements imposed by the sex offender registration statutes in Virginia and Texas, as well as by the federal statute. . . . If we were to find that the requirements of those statutes were not in fact collateral consequences, *then we would be holding that any convicted sex offender could challenge his conviction "at any time on federal habeas," with the consequence that the in-custody jurisdictional requirement of § 2254 would be read out of the statute. Maleng*, 420 U.S. at 492 . . . . *Maleng* unambiguously rules out such a result.

*Id.* (second emphases added).

The undersigned finds *Wilson's* logic persuasive. *See also Stevens*, 2009 WL 161216, at *11 ("[I]f Petitioner's argument [that SORA residence restrictions create a substantial limit on physical liberty] were accepted, then *every* state registration law presumably would place certain sex offenders 'in custody,' because every such law would cause certain sex offenders to be banned 'from living in specific areas of certain cities.' This Court is unwilling to accept an argument that would have such a broad, far-reaching effect, and would contradict the rulings of so many other courts across the country.").

### b. The Seventh Circuit's *Stanbridge v. Scott*.

Perhaps even more analogous to the present action is the Seventh Circuit's recent opinion in *Stanbridge v. Scott*, 791 F.3d 715 (7th Cir. 2015).

11

There the petitioner had fully completed his criminal sentence but was civilly confined to a sex-offender facility. *Id.* at 716. When he attempted to attack his underlying criminal conviction in a writ of habeas corpus, the district court dismissed it on grounds he was not "in custody." *Id.* at 717. On appeal, the petitioner argued that his civil confinement was substantially "more than a negligible restraint on his physical liberty of movement; therefore, . . . it is more than a collateral consequence." *Id.* at 719.

Clarifying its holding in *Virsnieks*, the Seventh Circuit held that "a habeas petitioner is not 'in custody' pursuant to a particular conviction unless his physical liberty of movement is limited in a non-negligible way and that limitation is a *direct* consequence of the challenged conviction." *Id.* "A consequence is direct if it is imposed by the sentencing court as part of the authorized punishment, and included in the court's judgment.'" *Id.* (internal quotation marks and brackets omitted). "In contrast, a consequence is collateral 'if it is not included in the court's judgment,' no matter whether the consequence 'is imposed on a person automatically upon conviction' or serves as a necessary predicate for a subsequent determination by a 'court or administrative agency on grounds related to the conviction.'" *Id.* (citation omitted).

As explained above, the trial court did not sentence Petitioner to SORA registry – the judgment makes no mention of the statute. Doc. 8, Ex. 1.

12

Under the Seventh Circuit's sound reasoning, even if the Court assumes that Oklahoma's SORA's restrictive measures restrain Petitioner's physical liberty "in a non-negligible way,[4] that restraint is not a direct consequence of his criminal conviction." *Stanbridge*, 791 F.3d at 721. So, Petitioner is not "in custody" for purposes of his writ of habeas corpus. *Id.* at 720.

### 3. "In custody" summary.

The Tenth Circuit, this Court, and all the circuit courts to address the question, have uniformly held that one's required registry as a sex offender does not place him "in custody." The undersigned finds no authority to support Petitioner's contention that Oklahoma's residency restrictions undermine those holdings. And, the Seventh Circuit held a petitioner not "in custody" under much more physically restrictive conditions. So, the undersigned finds that Petitioner was not "in custody" when he filed his habeas petition and this Court lacks jurisdiction over Petitioner's §§ 2241 or 2254 claims. *See Keller v. Oklahoma*, 486 F. App'x 750, 750-51 (10th Cir. 2012) (affirming the district court's conclusion that "because [petitioner] is not currently in custody pursuant to a state judgment [under § 2254], he cannot satisfy the 'in custody' requirement of 28 U.S.C. § 2241(c)(3)"). The

---

[4] *See Starkey*, 305 P.3d at 1025 ("We find SORA's registration and notification provisions impose substantial disabilities on registrants.").

13

Court should grant Respondents' motion to dismiss and dismiss the petition as arising under either §§ 2241 or 2254. Doc. 8.

## III. Petitioner's alternative requests for a writ of audita querela or coram nobis.

Anticipating that the Court would lack jurisdiction under §§ 2241 or 2254, Petitioner "still presses his claim via the common law writs of *coram nobis* and *audita querela*, neither of which require that the petitioner be in custody[.]" Doc. 9, at 8. The Court should deny both requests.

### A. Writ of audita querela.

"Audita querela is an ancient common law writ, which translated means 'the complaint having been heard.'" *Rawlins v. Kansas*, 714 F.3d 1189, 1192 (10th Cir. 2013). Such a rarely-granted writ "must be brought on 'legal' rather than 'equitable' grounds. The petitioner must show something like an intervening change in law, rather than argue that the collateral consequences of the conviction have turned out to be unduly harsh." *Id.* at 1193 (citation omitted). "[A]udita querela addresses unanticipated situations that arise after judgment." *Id.* at 1196.

Petitioner's only claim is that the OCCA violated his constitutional rights when it modified his child sexual abuse conviction to an incest conviction. Doc. 1, at 15-17. Petitioner argues only that the Oklahoma legislature prohibited such action in 1978. *Id.* That is, Petitioner has not

14

alleged an intervening change in law or that an unanticipated situation has arisen since judgment. So, Petitioner may not avail himself to a writ of audita querela. *See Rawlins*, 714 F.3d at 1196 (holding that where petitioner, who was no longer in custody, was trying to challenge "constitutional defects that would normally be raised through a § 2254 petition," the writ of audita querela was not the appropriate writ).[5]

**B. Writ of coram nobis.**

The writ of coram nobis also derives from England common law so that "a party could allege [the absence of certain essential legal requirements] 'however late discovered' – even after final judgment." *Id.* at 1193. Because Petitioner is not "in custody," a writ of coram nobis may serve as an appropriate vehicle in this instance. *Chaidez v. United States*, 133 S. Ct. 1103, 1106 n.1 (2013) ("A petition for a writ of *coram nobis* provides a way to collaterally attack a criminal conviction for a person . . . who is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2244."); *Rawlins*, 714 F.3d at 1196. However, *this* Court cannot issue the writ.

"[F]ederal courts have no jurisdiction to issue writs of coram nobis with respect to state criminal judgments." *Rawlins*, 714 F.3d at 1196 (citation

---

[5] Petitioner had seven months between the OCCA's decision and the discharge of his sentence in which he could have raised his claim in a § 2254 petition.

15

omitted). This is because under the All Writs Act, federal courts "'may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law,'" and "what auxiliary writs are 'agreeable to the usages and principles of law,'" depend on common law. *Id.* (citations omitted). In common law, the "scope of coram nobis was a writ from the judgment-issuing court to itself, granting itself power to reopen that judgment. It is not a writ that one court may issue to another." *Id.* So, Petitioner must move for a writ of coram nobis "in the sentencing court, rather than any convenient federal court." *Id.*

Petitioner "believes *Rawlins* and its progeny to be wrongly decided," but he offers little argument in support. Doc. 9, at 8. Under such circumstances, the undersigned must follow published Tenth Circuit precedent, *see Spedalieri*, 910 F.2d at 709, and recommends that the Court deny Petitioner's request for a writ of coram nobis.

### III. Recommendation and notice of right to object.

The undersigned finds that when he filed this action, Petitioner was not "in custody" under §§ 2241 or 2254 and this Court therefore lacks jurisdiction over his habeas petition. So, the Court should grant Respondents' motion to dismiss, Doc. 8, and then deny Petitioner's alternate requests for a writ of audita querela or a writ of coram nobis. For different reasons, neither writ is available to Petitioner in this forum.

The undersigned advises the parties of their right to object to this report and recommendation by the 19th day of October, 2015 under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned further advises the parties that failure to make timely objection to this report and recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

ENTERED this 28th day of September, 2015.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE